399 P.2d 691

PHELPS DODGE CORPORATION, COP-
PER QUEEN BRANCH, Petitioner,

v.

The INDUSTRIAL COMMISSION of Ari-
zona and William L. Nelson, Respondents.*

No. I CA–IC 2.

Court of Appeals of Arizona.

March 3, 1965.

Evans, Kitchel & Jenckes, Phoenix, by Stephen W. Pogson, for petitioner.

Johnson & Shelley, Mesa, by J. La Mar Shelley, Mesa, for respondents.

STEVENS, Chief Judge.

On April 1, 1939, William L. Nelson, then 35 years of age, sustained an injury in the course of and within the scope of his em-

* The Petition was filed with the Arizona Supreme Court and assigned that Court's Number 8296. The Arizona Supreme Court issued its Writ of Certiorari. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

ployment. On November 6, 1939 the Industrial Commission entered an award. After reciting the findings in relation to temporary disability, the Industrial Commission entered the following second finding:

"Said injury caused also a permanent partial disability equal to 30% of a total permanent disability entitling said applicant to compensation therefor in the sum of $21.70 monthly during the life of said applicant."

The Industrial Commission's award was consistent with these findings.

Almost immediately thereafter Nelson wrote to the Industrial Commission requesting "two thousand dollars at once" in order to pay some indebtedness and requesting that the balance be paid monthly. This request was honored by the Industrial Commission on November 15, 1939 by a document entitled "Amended Findings and Award". Paragraphs 2 and 3 of this document under the heading of "Findings" are as follows:

"Said injury caused also a permanent partial disability equal to 30% of a total permanent disability entitling said applicant to compensation therefor in the sum of $21.70 monthly during the life of said application.

"That it appears to the best interests of said applicant that said compensation for permanent partial disability be commuted and rearranged and paid as follows: $2000.11 payable forthwith; and the additional sum of $100.00 monthly for a period of 23 months, and $83.96 for one month."

The Industrial Commission then made an award consistent with the findings. This action was taken under the authority of Section 1443 of the 1928 Revised Code of Arizona which section is as follows:

"§ 1443. Conversion to Lump-Sum Payment. The commission may allow the conversion of the compensation into a lump-sum payment, not to exceed the sum of sixty-five hundred dollars, under such rules and regulations and system of computation as it may devise for obtaining the present value of such compensation. (§ 76, id., rev.)"

Shortly after the November 15th action by the Commission, Nelson wrote to the Commission expressing his satisfaction and appreciation. It may be of interest to note that the Arizona Supreme Court in the later case of Gashette v. Industrial Commission, 80 Ariz. 5, 291 P.2d 783 (1955) held that action similar to the November 15th action was not in fact an award but was merely "an order".

In 1958 Nelson filed a petition to reopen which was not favorably considered and no judicial review was sought with reference to this action. In January 1961 he filed his "Petition and Application for Readjustment or Reopening of Claim". On February 6th the Industrial Commission entered its "Findings and Awarded for New, Additional or Previously Undiscovered Disability" stating in its findings in part

"That applicant is entitled to accident benefits and compensation, if indicated, from and after January 30, 1961 until further order of this Commission"

After interim proceedings and on November 13, 1963, the Referee filed his report with the Commission, his reported findings being:

"1. That the applicant does have new and additional disability relative to the industrial injury he sustained on April 1, 1939, in that there has been additional deterioration of the liver and increased mental anxiety causing psychiatric disability.

"2. That although the mathematical percentage of general physical functional disability has not changed, the essential character of the physical functional disability has changed and has progressed to the point where it is adversely affecting the claimant's earning capacity in excess to that found at the close of the original claim.

"3. That said applicant has sustained a one hundred percent (100%) loss of his earning capacity.

"4. That the average monthly wage of the applicant prior to the industrial injury of April 1, 1939 was the sum of $131.52."

Objections were filed to the report. The file reflects an arithmatic computation as follows:

"Payments monthly $21.70 or the sum yearly $260.40 x 21 yrs = $5467.40 total he would have drawn at monthly payments.

Lump Sum Paid .......... $ 2,000.11
Add. Monthly
Payments Pd. ............ 2,393.96
                        $ 4,384.07 which amount is less than monthly payments above."

———◆———

Thereafter and on December 19th the Commission rendered its decision upon rehearing which included the following findings among others:

"8. That this Commission finds that said applicant has suffered a 30% general physical functional disability as a result of said injury by accident.

"9. That as a result of the injury sustained in the accident of April 1, 1939, and the general disability resulting therefrom, the applicant has sustained a 100% loss of earning capacity; therefore the applicant is permanently and totally disabled and is entitled to an award therefor pursuant to A.R.S., Section 23-1045, Sub-Section B, based upon 65% of his average monthly wage prior to injury, which is equal to the sum of $85.49 monthly during his lifetime."

And made the following award among others:

"3. The additional sum of $85.49 monthly during life of said applicant, the first payment effective as of October 24, 1962, and payable when award becomes final."

It is this action by the Commission and particularly sub-paragraph 3 of the Award which is presented to us for our consideration.

■ It was not until the proceedings leading up to the December 1963 award that the question of the propriety of the language used in the November 6, 1939 Award was questioned. We will not review the technical language at this time. We find that it has but one practical interpretation and that is that on the date of the Award Nelson was entitled to the sum of $21.70 per month for the balance of his life, subject to certain statutory provisions which we need not here discuss. It is our opinion that when Nelson sought and received an order of commutation in 1939 and then received the payments pursuant to that order that he was paid in full for the disability which was then determined that he had suffered in the April 1, 1939 accident. Therefore as a matter of law, as of December 16, 1963, he was still receiving the $21.70 a month even though it was paid in advance by virtue of the November 15, 1939 order.

As this matter is presented to us, neither side questions the fact that the $85.49 figure

is "65% of his average monthly wage prior to the injury" nor does either side quarrel with the effective date of the increase, namely October 24, 1962.

 Nelson urges that, in all good conscience, the 65% should be computed on today's wage scale for work similar to that he was performing in 1939. This cannot be done. The employer urges that the employer should be given credit in the sum of $21.70 per month against the $85.49 figure. Since the $21.70 per month has already been paid we agree that, as a matter of law, the appropriate figure to have been awarded under the December 19, 1963 Award is the sum of $85.49 less the sum of $21.70, or the sum of $63.79 per month for the balance of his life. The matter of a conversion or commutation of a monthly award to a lump sum payment is for the benefit of the employee. As was stated in the case of Marks v. Otis Elevator Company, 276 Mich. 75, 267 N.W. 790 at 791 (1936)

> "* * * the employee has the advantage of a large immediate payment, * * * on the other hand, the employer or his insurer is taking a certain risk. The employee may entirely recover from all disability, or he may die, or he may earn a much larger sum than his average weekly wage at the time of the injury, long before the lump sum would have been exhausted, had it been paid out in weekly payments."

The Arizona Supreme Court, so far as we are informed, has not passed upon this identical fact situation. The case of Zagar v. Industrial Commission, 40 Ariz. 479, 14 P.2d 472 (1932) involved a situation wherein the claimant sought to reopen his case by reason of a deterioration of his condition. The Arizona Supreme Court pointed out that the investigation was limited to new disability not considered in the original award and on page 485 of the Arizona Report, page 474 of 14 P.2d the Court stated:

* The petition was filed with the Arizona Supreme Court and assigned that Court's Number 7862. The Arizona Supreme

"* * * The disabilities shown by the evidence upon the original hearing were compensated by the original award. This follows as a natural consequence because the commission in making an award acts in a judicial capacity, and its judgment upon the facts developed in the original hearing and award is res judicata upon such facts."

The award is set aside.

CAMERON and DONOFRIO, JJ., concurring.