592 P.2d 392

**EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, and Karlson Machine Works, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Herbert M. Munson, Respondent Employee by Helen M. Munson, Guardian of the person of Herbert M. Munson, an incapacitated person.**

**Herbert M. MUNSON, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Karlson Machine Works, Respondent Employer,**

**Employers Mutual Liability Insurance Company of Wisconsin, Respondent Carrier.**

**Nos. 1 CA–IC 1917, 1 CA–IC 1920.**

Court of Appeals of Arizona, Division 1, Department C.

March 13, 1979.

Lewis & Roca by Merton E. Marks, R. Kent Klein, Phoenix, for Employers Mut. Liability Ins. Co. of Wisconsin and Karlson Machine Works.

John H. Budd, Jr., Chief Counsel, James L. Stevenson, Acting Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Michael Mignella, Jr., Phoenix, for Herbert M. Munson.

John A. Flood, Phoenix, for amicus curiae for Arizona Trial Lawyers Ass'n.

## OPINION

WREN, Judge.

In this review of an award of the Industrial Commission we are called upon to determine the scope of the Commission's jurisdiction over and the extent of its inquiry into settlements proposed by the parties before it.

Herbert M. Munson, the injured employee, sustained a severe head injury when he fell from the running board of a co-employee's pickup truck. Mr. Munson was immediately transported to a hospital emergency room. His condition was diagnosed as a complex linear fracture of the left parietal area and an avulsion laceration of the scalp. Surgery was performed, but as of the time this case was heard Mr. Munson remained in a comatose state.

A claim for workmen's compensation benefits was filed by Munson's wife and legal

guardian, Helen M. Munson. The carrier denied the claim alleging there was insufficient proof that the injury arose out of Mr. Munson's employment as a janitor with Karlson Machine Works. The carrier's position was that Mr. Munson's fall was caused by a preexisting nonindustrial neurological deficit and was, thus, idiopathic in nature and noncompensable.

A hearing was requested on the denial, but before it was held the parties entered into a proposed compromise and settlement that was presented to the Industrial Commission for approval. The proposed settlement was in the amount of $238,860.00, to be paid as follows:

> Following approval of the settlement by this Commission and by the Probate Court of Maricopa County, the defendant carrier will pay to Mrs. Munson the sum of $118,860.00 in a lump sum. A release will be executed by her fully releasing the defendants of any further liability of any nature whatever arising out of said accident. The balance of $120,000.00 will be paid at the rate of $1,000.00 per month with the first such payment commencing on the month following payment of the initial sum and execution of the release. These payments shall be paid through a paid-up annuity policy which Mrs. Munson will purchase either from Employers Life Insurance Company of Wausau, the life affiliate of the defendant insurance carrier, or from any other life insurance underwriter of her choice. Under the terms of the annuity agreement, the $1,000.00 monthly payments shall be paid until the balance of $120,000.00 is fully paid. In the event of the death of Mr. or Mrs. Munson prior to the payment of the entire $120,000.00, the balance shall be paid to the survivor as aforesaid. At the death of the survivor any balance due will be paid to the estate of the survivor.

The proposal was considered by the Industrial Commission at several meetings, eventually resulting in an award disapproving the proposed compromise and settlement because the commissioners felt that the proposed payment was in an amount beyond their authority to approve and because neither statutory nor case law had provided them with sufficient guidelines for reviewing proposed settlements.

Both the Munsons and the employer filed petitions for special action following the award, and they were consolidated for consideration by this Court.

In *Gray v. Industrial Commission*, 24 Ariz.App. 499, 539 P.2d 973 (1975), *aff'd and adopted*, 113 Ariz. 296, 552 P.2d 766 (1976), we held that where the compensability of a claim is at issue and there exists a genuine and bona fide dispute as to whether the claim is compensable the Industrial Commission has the authority to approve proposed settlements offered by the parties involved. In the case before us there is no allegation that a genuine dispute as to compensability does not exist nor that reasonable persons would differ as to whether the claim is compensable. The Commission in fact found that a genuine dispute existed in finding number 2 of the award in question.

■ In finding number 5, the commissioners question whether the Commission must accept the statement of the parties that "a genuine dispute as to compensability exists" or whether the Commission must "make its own independent determination as to compensability and then act in accordance with that determination." Clearly, our decision in *Gray* contemplated that the Commission should determine whether reasonable persons would in fact differ as to whether the claim was compensable before approving a proposed settlement. In this case, however, that finding and underlying inquiry by the Commission is reflected in finding number 2 where it is stated, "the facts presented in the petition and other pertinent records do not on their own face reveal a clearly compensable compensation claim and reasonable men could differ as to whether the claim is compensable or not." The Commission has in this case, thus, satis-

fied the requirement set forth in *Gray*. A genuine dispute exists.

The Commission's second proposition is that, assuming a genuine dispute over compensability, it is without jurisdiction to approve the compromise and settlement proposed in this case because the amount exceeds $25,000 which is the maximum lump sum commutation award authorized by A.R.S. § 23–1067. The Commission further argues that the proposed monthly payments of $1,000.00 exceed the maximum amount that would be payable if the claim were eventually found compensable [1] and, therefore, is in excess of its jurisdiction.

We disagree with the Commission's position relating to its jurisdiction for several reasons. First, there is nothing in *Gray* or in the case it relied on, *Brigham Young University v. Industrial Commission of Utah,* 74 Utah 349, 279 P. 889 (1929), suggesting that any upper limit exists for settlements agreed upon before compensability has been established.

▆ Second, the limitation of $25,-000.00 found in A.R.S. § 23–1067 is a limitation only on the amount of lump sum permanent disability benefits the Commission may award after a claim has been processed through the statutory system and been closed as stationary. Even then, the claim may be reopened for medical benefits, temporary disability benefits, and additional permanent disability benefits provided credit is given for the permanent disability benefits already paid in the lump sum commutation. *Phelps Dodge Corp. v. Industrial Commission,* 1 Ariz.App. 70, 399 P.2d 691 (1965). The $25,000 limit is, then, not a limit on anything except the Commission's power to make a permanent disability award in one lump sum. It is not determinative of the amount a claimant may eventually receive. The only connection we can perceive between lump sum commutations and the proposed compromise and settlement here is the fact that both involve lump sum payments. The payments are, however, based on distinctly different considerations and there is no indication that the legislature intended the $25,000 limitation to apply to any situation except the one for which it is specifically designed.

▆ In arriving at a proposed settlement, the parties, as we have already noted, must establish the existence of a genuine dispute over whether the claim is indeed compensable. The possibility that a claimant could have received a different amount than that proposed in the compromise and settlement if his claim had been found compensable is irrelevant since, if compensation is sought within the statutory scheme, he might receive nothing. We have recognized the validity of agreements altering the amount receivable by a claimant under the statutory compensation system and comment here only that, by definition, a compromise involves concession by all involved and need not mirror the compensation plan provided by our statutes.

We agree with the statement in *Gray* that the scope and criteria for Commission review of proposed settlements has been appropriately set forth by the Utah Supreme Court in *Brigham Young University v. Industrial Commission:*

> [T]he parties had the undoubted right to make a settlement, if fairly entered into, and free from fraud, deceit, misrepresentation, or mistake, and where there was no overreaching or advantage taken. 279 P. at 892.

▆ Once the Commission has determined that, as here, a genuine and bona fide dispute as to compensability exists, it should determine whether the settlement was fairly entered into, and whether it is free from fraud, deceit, misrepresentation, mistake and overreaching. If such is the case, the settlement should be approved. We note here that the Commission's role in

---

1. At the time of Mr. Munson's injury, the maximum average monthly wage allowed by statute was $1,000.00 which, during the period of temporary total disability, could result in a maximum monthly payment of $667.00. A.R.S. § 23–1045(A).

reviewing the fairness of a proposal is to review it as to the parties before it. Its role is not to examine fairness in light of what other claimants whose claims are administered through the statutory scheme may receive. What another claimant may or may not be able to receive is not determinative of whether the settlement is fair to the claimant and employer proposing it. The Commission should look to the facts before it in each case when making its determination regarding the fairness of the proposal.

The award is set aside.

EUBANK, P. J., and STEVENS, J., Retired.