713 P.2d 318

**TIME, D.C. FREIGHT LINES,**
Petitioner Employer,

**Liberty Mutual Insurance Company,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**James D. Edgmon,**
Respondent Employee.

**No. 1 CA–IC 3110.**

Court of Appeals of Arizona,
Division One, Department D.

Sept. 12, 1985.

Motion for Reconsideration Denied
Oct. 29, 1985.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith, Donald L. Cross and Lawrence H. Lieberman, Phoenix, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Alston, Edwards & Novak, P.C. by Cecil A. Edwards, Phoenix, for respondent-employee.

## OPINION

CONTRERAS, Judge.

This is a special action review of an Industrial Commission decision awarding compensation for total temporary disability. One legal issue is presented: Is a carrier entitled to a credit based upon a prior commuted award against any temporary disability compensation available to the claimant upon a subsequent reopening of his claim? We conclude that the carrier is entitled to such credit and therefore set aside the decision and award denying this credit.

The background necessary to this review follows. The original industrial injury claim was closed with a 10 percent perma-

nent impairment. The parties stipulated to a reduced earning capacity of 34.21 percent. On June 29, 1981, the Industrial Commission awarded commensurate permanent partial disability benefits of $161.11 per month. This monthly benefit was subsequently commuted to a lump sum of $25,000, the statutory maximum. *See* A.R.S. § 23–1067(B). When commuted, the present value of the June 29, 1981 award was $32,172.06. The commutation award states that "this lump sum commutation finalizes all benefits as provided in the award entered June 29, 1981."

◼ The respondent employee (claimant) subsequently reopened his claim. The petitioner carrier (carrier) allowed temporary total disability benefits, but it claimed a credit for the value of the original monthly permanent partial disability award ($161.11). The claimant disputed this credit. *See generally* A.R.S. § 23–1061(J). To support its position, the carrier relied on *Cunningham v. Industrial Commission,* 16 Ariz.App. 443, 494 P.2d 48 (1972).[1] Despite *Cunningham,* the administrative law judge issued an award denying the credit. The award was affirmed on administrative review and this special action followed.

On review, the carrier asserts that *Cunningham* is dispositive. In that case, the claimant had a total loss of earning capacity. He then requested and received a lump sum commutation. The commutation award specifically provided that reopening benefits would be limited to medical benefits and dependent's allowance. The claim was subsequently reopened without any temporary disability benefits. On review, the claimant challenged this denial by arguing that the commutation award itself was invalid. In rejecting these arguments, the *Cunningham* court generally observed:

In discussing A.R.S. § 23–1067 (1956) these general principles must be kept in mind. First, once a claim has been determined to be compensable, the Commission cannot approve a payment larger than the amount indicated in the statute, i.e., $6,500 (now $25,000). (Citation omitted.) Second, when an employee is awarded permanent partial disability compensation for life and the award is converted into a lump-sum payment, later on reopening claimant is deemed to be still receiving the award monthly until he dies and to have been paid in full for the disability existing at the inception of the compensation. *Phelps Dodge Corp. Copper Q. Br. v. Industrial Commission,* 1 Ariz.App. 70, 399 P.2d 691 (1965). Thus, in the instant case the Commission was foreclosed from granting a lump-sum payment greater than $6,500. Moreover, since the 1968 award was based on a 100 percent loss of earning capacity he is now deemed to still be receiving the monthly permanent partial compensation awarded at that time.

*Cunningham v. Industrial Commission,* 16 Ariz.App. at 445, 494 P.2d at 50.

The claimant maintains that *Cunningham* is not dispositive because it is legally erroneous and distinguishable in fact. We first address the argument that it is legally wrong.

*Cunningham* relied on *Phelps Dodge Corp.* as authority for the credit. This latter case involved a rearrangement of a commuted permanent partial disability award to a permanent total disability award. The credit for the commuted permanent partial disability award, therefore, was applied against another award for permanent disability. *See Phelps Dodge Corp. v. Industrial Commission,* 1 Ariz. App. 70, 73, 399 P.2d 691, 694 (1965). In

---

1. The administrative law judge referred to *Lawrence Hickey & Sons, Inc. v. Industrial Commission,* 1 CA–IC 2697, slip op. at 3 (Ariz.App. August 31, 1982) (memorandum decision), a subsequent decision which considered *Cunningham* "directly in [sic] point and fully support[ing] the carrier's position" that it is entitled to a credit. However, memorandum decisions

are not regarded as precedent nor are such decisions to be cited except for the purpose of establishing the defense of res judicata, collateral estoppel, or law of the case. Rule 28(c), Arizona Rules of Civil Appellate Procedure; *Asarco, Inc. v. Industrial Commission,* 122 Ariz. 241, 594 P.2d 107 (App.1979).

contrast, *Cunningham* and the present case applied the credit against an award for temporary disability benefits.

The claimant asserts that this application subverts the three-stage compensation plan. We disagree. To the contrary, in our opinion the claimed credit is consistent with this plan which we now consider.

■ Disability compensation is paid in stages: temporary total, temporary partial, and permanent partial or total. *See Hardware Mutual Casualty Co. v. Industrial Commission*, 17 Ariz.App. 7, 494 P.2d 1353 (1972). But the common denominator for disability compensation during each stage is the claimant's reduced earning capacity and the fundamental point is that whether temporary or permanent, the claimant is being compensated for a loss of earning capacity. *Compare, e.g., Langbell v. Industrial Commission*, 111 Ariz. 328, 529 P.2d 227 (1974), *with Felker v. Industrial Commission*, 134 Ariz. 19, 653 P.2d 369 (1982); *see also* 2 A. Larson, *Workmen's Compensation Law* § 57.21 (1983). It is not a situation, as claimant suggests, of deducting apples from oranges. Rather, it is a constant, and more specifically, it is a situation deducting dollars from dollars or, to correctly use claimant's illustration, it is deducting apples from apples. Temporary disability compensates for reduced earning capacity during the time that active medical treatment continues; permanent disability compensates for reduced earning capacity after active medical treatment stops. A lump sum commutation is, in certain instances, permitted by statute and is simply payment in full for this permanent loss in earning capacity. Upon reopening, the claimant returns to temporary disability status, but he nevertheless has been paid for the specified loss.[2] In the present case, by reason of the lump sum commutation, it was contemplated at the time of payment that claimant was being paid for his loss of earning capacity in the amount of $161.11 per month for the remainder of his life.

■ When our statutory three-stage compensation plan is thus considered, temporary disability benefits must be reduced commensurately and the application of a credit is clearly indicated. This result is accomplished by giving the carrier a credit against the present loss of earning capacity monthly entitlement in the dollar amount of the prior monthly loss of earning capacity award. Realistically, and in view of our workers' compensation plan, any other holding would result in a claimant receiving duplicate payment for his loss of earning capacity during the period of the reopening.

We hasten to point out that this credit is not a penalty assessed against a claimant who has received a lump sum commutation. Rather, it treats claimants equally. By way of illustration, a claimant who is receiving monthly permanent disability benefits pursuant to an award before reopening does not continue to receive those benefits after reopening; he receives but one payment for the reduced earning capacity which includes that amount which was previously being received as permanent disability benefits. Similarly, a claimant who commuted a permanent disability award should not be paid again for that loss after reopening has taken place.

The application of a credit to the carrier does not assume an unchanged earning capacity after reopening. It merely prevents double recovery for the same loss. Any additional loss is fully compensated. The claimant in the case before us has already been paid for his loss of earning capacity in the amount of $161.11 per month for the remainder of his life. If he now, as a result of his industrial injury, has suffered an increase in his loss of earning capacity, whether temporary or permanent, then he is entitled to receive compensation for that increase at the applicable statutory rate. In the present case, after reopening and after the credit claimed by reason of the lump sum commutation, the carrier allowed

---

**2.** The rate of compensation for reduced earning capacity differs. *Compare* A.R.S. §§ 23–1044(A), 23–1045(A) and (B) *with* A.R.S. § 23– 1044(C). A shift in status, therefore, may increase benefits for the same reduction in earning capacity.

an additional $403.96 per month for the increased loss.

We further disagree with claimant's assertions that the carrier has assumed this risk of double recovery. A lump sum commutation is a settlement of the right to permanent disability benefits under the existing award. The carrier loses the right to rearrange benefits should the claimant's earning capacity increase as well as the right to terminate benefits should the claimant die during the period such benefits would have been paid. These risks of increased earning capacity or premature death, however, concern the permanent disability benefits under the settled award. In contrast, the purpose of the credit is not to alter the permanent disability benefits under the previous award, but to prevent a double recovery during the period of temporary disability after reopening.

We turn now to the argument that *Cunningham* is factually distinguishable from the present situation. It is, but the distinction makes no substantive difference. The claimant correctly notes that the commutation award in *Cunningham* specifically excluded future disability benefits and that the commutation award in the present case did not. We are unpersuaded, however, that the kind of notice present in *Cunningham* is necessary in order for the carrier to claim a credit upon reopening.

Notice is required to protect a legitimate interest. A claimant has no reasonable expectation of double payment. He therefore is not entitled to notice that he will not receive double payment. Moreover, the unusual facts of *Cunningham* strongly suggest that the notice was more in the nature of a precautionary measure by claimant's attorney. Against his own attorney's recommendation, the totally disabled claimant in *Cunningham* nevertheless requested a commutation which was worth substantially less than the then present value of his monthly disability award. The specific provision in the commutation award served as a defense against any subsequent challenge by the claimant to the commutation itself. In contrast, the claimant in the

present case does not challenge the commutation. To the contrary, he seeks to retain that full payment while receiving full temporary disability compensation as well.

In this context, the claimant's reliance on *Brooks v. Arkansas-Best Freight System, Inc.*, 247 Ark. 61, 444 S.W.2d 246 (1969) is misplaced. There, totally disabled claimants had commuted their permanent disability awards to a lump sum and then sought additional medical benefits. The court rejected the argument that under Arkansas law the commutation settled the claimants' rights to future medical benefits. Nothing in *Brooks* suggests that the claimants would be entitled to additional disability compensation. That case, therefore, is consistent with our analysis.

■ The claimant lastly seems to argue that a credit should not be *implied*. We acknowledge that there is no statute which expressly permits a credit of any kind. But, the propriety of a credit is not dependent upon express authority. Rather, it depends on its consistency with the compensation system as a whole. However, in order to be entirely consistent, it appears to us that the amount of the monthly credit against temporary disability should, in the present case, be $125.20 rather than $161.11. The present value of the June 29, 1981, award when commuted was $32,172.06 predicated upon permanent partial disability benefits of $161.11 per month. But the lump sum commuted amount received was $25,000, the maximum permitted by statute. This constituted 77.7% of the then present value of the award. Accordingly, upon reopening and after reinstatement of temporary total disability benefits the carrier should be entitled to a credit of 77.7% of the commuted amount which, on a monthly basis, is $125.20. The claimant is not entitled to a double recovery nor is the carrier entitled to a windfall by reason of the statutory limit on lump sum commutation.

For the reasons previously stated, the credit against temporary disability is fully consistent with the workers' compensation system as a whole. In our opinion *Cun-*

*ningham* correctly implied a credit against temporary disability. The same situation obtains here. We therefore set aside the award denying the credit.

Award set aside.

CORCORAN and MEYERSON, JJ., concur.