766 P.2d 920 (1988)
108 N.M. 76
LEA COUNTY GOOD SAMARITAN VILLAGE and Zurich-American Insurance Companies, Plaintiffs-Appellees,
v.
Gary Lee WOJCIK, Claimant-Appellee,
v.
Fabian CHAVEZ, Superintendent of Insurance for the State of New Mexico and the New Mexico Subsequent Injury Fund, Defendants-Appellants.
No. 10331.
Court of Appeals of New Mexico.
November 17, 1988.
*923 Richard E. Olson, Thomas D. Haines, Jr. Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for defendants-appellants.
James C. Ritchie, Gregory P. Smith, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for plaintiff-appellee Zurich-American Ins. Co.
Lawrence D. Hanna, Hanna & LaBree, Hobbs, C. Barry Crutchfield, Templeman and Crutchfield, Lovington, for claimant-appellee.

OPINION
DONNELLY, Chief Judge.
The New Mexico Subsequent Injury Fund appeals from a judgment apportioning liability between the Fund and Lea County Good Samaritan Village and its insurance carrier, Zurich-American, for worker's compensation benefits payable to claimant. We discuss: (1) whether the trial court erred in denying the Fund a reduction for monies previously paid to claimant in settlement of a claim for a worker's prior injury involving the same bodily member or function; (2) whether the trial court's findings involving medical expenses paid by an employer and its carrier on behalf of claimant are supported by substantial evidence; and (3) whether the trial court erred in awarding interest against the Fund. We affirm in part and reverse in part.
Claimant was injured in January 1983 in a work-related accident while he was employed at the Roswell YMCA. As a result of this accident claimant sustained serious and permanent neurological injuries. Following the filing of a worker's compensation action, claimant entered into a lump sum settlement with the YMCA and its insurer. The district court approved the lump sum award in the amount of $110,000.00, which included $22,000.00 for attorney fees; however, the judgment did not contain any express finding specifying the amount or percentage of claimant's disability or the amount allocated for compensation, vocational rehabilitation benefits, or accrued and future medical expenses.
In May 1984 claimant was hired by the Lea County Good Samaritan Village (Good Samaritan) as a dietary aide and porter. Good Samaritan knew that claimant had been previously injured and that he had suffered neurological impairment but was not fully informed concerning the extent of his prior disability. In September 1984 while working with the Good Samaritan maintenance crew, claimant fell from a roof. The injuries sustained by claimant in the fall were to the same function and bodily member that had been affected in his initial injury. On April 30, 1986, following his second accident, claimant filed a certificate of preexisting physical impairment reciting that he had a 60% disability of which 55% was attributable to the preexisting disability resulting from his January 1983 prior injury. Thereafter, appellees Good Samaritan and Zurich-American filed a declaratory judgment action seeking adjudication of their liability under the Workers' Compensation Act for benefits owing to claimant and for apportionment of liability *924 of any benefits owing between themselves and the Fund. Claimant answered and filed a cross-claim against the Fund seeking the award of additional worker's compensation benefits.
After a trial on the merits the trial court adopted findings of fact and conclusions of law determining that claimant had sustained a second injury and was totally and permanently disabled. The trial court apportioned liability for claimant's disability, finding that the Fund was 90% liable and that Good Samaritan and Zurich-American were 10% liable for the payment of compensation benefits. The trial court also (a) determined the Fund was not entitled to any reduction on account of benefits paid claimant pursuant to the settlement of his previous claim; (b) ordered the Fund to reimburse Good Samaritan and Zurich-American 90% of the $25,873.56 in medical expenses paid by the employer and its carrier; and (c) ordered post-judgment interest against the Fund then, by amended judgment, attempted to delete such interest.

I. CLAIM OF REDUCTION
The Fund contends that it is entitled to a reduction for monies previously paid by the Roswell YMCA and its insurance carrier to claimant in settlement of the first worker's compensation claim, which involved an injury to the same members and functions involved in claimant's subsequent injury.
The trial court denied any reduction on behalf of the Fund and adopted a finding that the evidence presented by the Fund was insufficient to allow the court to apply any reduction. The Fund contends this ruling was in error and that the court's failure to allow reduction will result in an award of duplicate benefits to claimant under both the Workers' Compensation Act and the Subsequent Injury Act (SIA). See NMSA 1978, §§ 52-1-1 to -2-13 (Repl. Pamp. 1987).
The Fund introduced evidence indicating that at the time of the settlement of the first suit, claimant had been paid 33 weeks of compensation benefits for temporary total disability. The Fund also introduced evidence consisting of a memorandum by the insurance carrier for the Roswell YMCA concerning the lump sum settlement with claimant. The memorandum did not itemize the component amounts included in the total settlement. Instead, the memorandum referred only to the $110,000 settlement and mentioned that the agreement included payments for medical benefits and compensation benefits without mentioning the sum of $22,000 in attorney fees which was part of the settlement. A witness for the carrier that negotiated the settlement conceded that the memorandum was intended for administrative purposes and that there was nothing in the file indicating the existence of any written agreement between the parties specifically apportioning the settlement.
Where a deduction is sought under Section 52-1-47(D), the burden of proof to establish a right to a deduction is ordinarily shared by the second employer and the Fund. Here, however, Good Samaritan withdrew its request for credit at the beginning of trial. Under these circumstances the Fund had the burden of proof to establish both its right to a reduction and the amount of the reduction. See § 52-1-47(D). A party alleging the affirmative of an issue bears the burden of proof thereon. Romero v. Cotton Butane, Inc., 105 N.M. 73, 728 P.2d 483 (Ct.App. 1986); Smith v. Trailways, Inc., 103 N.M. 741, 713 P.2d 557 (Ct.App. 1986).
Section 52-1-47(D) states:
[T]he compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any prior injury suffered by the worker if compensation benefits in both instances are for injury to the same member or function or different parts of the same member or function or for disfigurement and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury.
The SIA renders the employer liable only for the amount of disability attributable *925 to the second injury; the Fund is liable for the difference between the amount of the second disability and the total amount to which the worker is entitled as a result of both injuries. See Smith v. Trailways, Inc.; Gutierrez v. City of Gallup, 102 N.M. 647, 699 P.2d 120 (Ct.App. 1984); NMSA 1978, § 52-2-6 (Cum.Supp. 1986). The worker's compensation benefits payable on account of the subsequent injury, however, are subject to reduction to the extent that the benefits duplicate the benefits paid or payable as a result of the worker's prior injury. §§ 52-1-47, 52-2-12; Gonzales v. Stanke-Brown & Assocs., Inc., 98 N.M. 379, 648 P.2d 1192 (Ct.App. 1982); Gurule v. Albuquerque-Bernalillo County Economic Opportunity Bd., 84 N.M. 196, 500 P.2d 1319 (Ct.App. 1972). See generally 2 A. Larson, Law of Workmen's Compensation § 59.42(g) (1987).
In Gonzales this court emphasized that Section 52-1-47(D) "provides for a reduction in benefits payable for a second disability resulting from an accidental injury to the extent of benefits paid or payable for a disability resulting from a prior accidental injury... ." Id. 98 N.M. at 386, 648 P.2d at 1199 (emphasis in original & added). Thus, if an employee has previously sustained a compensable injury under the Workers' Compensation Act and has been awarded benefits and thereafter suffers a subsequent injury involving the same members or functions, neither the employer at the time of the second accident nor the Fund are liable for any impairment for which the worker has already been compensated. Id.
Gonzales also held that:
The employer and compensation carrier at the time of the second accidental injury are initially liable for disability resulting from the second accidental injury, to the full extent of the disability. Liability for disability resulting from the second accidental injury is reduced to the extent of benefits paid or payable for disability resulting from the first accidental injury if the requirements of § 52-1-47(D) are met. Even if these requirements are not met, the limitations in § 52-1-47(A) and (B) apply.
Id. at 386, 648 P.2d at 1199.
What proof is required in order to entitle the Fund to establish its right to a credit or reduction under Section 52-1-47 where the worker, his employer, and the employer's insurance carrier have entered into a court-approved lump sum settlement under the Workers' Compensation Act involving a prior injury? In such case the minimum the Fund must establish by a preponderance of the evidence is (1) the extent and nature of the worker's disability at the time of the settlement of his claim for the prior accidental injury; (2) the amount of the settlement for the prior injury, including the amount which is attributable to an award for compensation benefits, and the specific amount, if any, included in the settlement for payment of medical or vocational rehabilitation benefits, attorney fees, or other specific benefits; (3) the number of weeks of compensation benefits which were paid or payable to the worker for permanent or partial disability; and (4) the extent to which payments for the second injury will duplicate payments previously made to the worker for the prior accidental injury to the same bodily member or function. In determining the Fund's right to a deduction, the court can also consider evidence of the intent of the parties at the time the court approved the settlement agreement regarding allocation of specific benefits in the settlement, as well as proof of the weekly average wage payable to the worker at the time of his disability. Nor do we foreclose proof of other factors as may be dictated by the nature of the settlement of the circumstances of a particular case.
Proof of the extent of claimant's disability at the time of the approved settlement may be presented by testimony of a physician, other expert, or the worker. It may also be presented by other competent evidence.
Section 52-1-47(D) is silent concerning the method for determining amounts to be allocated to compensation benefits, medical benefits, vocational benefits, *926 or other specific benefits when the settlement fails to specifically detail the individual components of the award. A failure of the settlement, or the order approving settlement, to itemize the particular components of the award will not, however, foreclose the Fund from presenting evidence in order to secure a reduction in appropriate cases and to prevent double recovery. Cf. Gonzales v. Stanke-Brown & Assocs., Inc. (principle of fundamental fairness is applicable where act fails to detail method of apportionment). A court-approved settlement is, in legal effect, a final award of compensation and may be used to determine the right of a party to a deduction. Harrison Sheet Steel Co. v. Industrial Comm'n, 404 Ill. 557, 90 N.E.2d 220 (1950); see also Time, D.C. Freight Lines v. Industrial Comm'n, 148 Ariz. 117, 713 P.2d 318 (Ct.App. 1985).
Where proper evidence is presented as to each of the factors delineated above, the fact finder may determine the amount, if any, of the deduction to be granted by subtracting from the total amount of compensation the specific amounts proven to have been paid for medical expenses, vocational rehabilitation, or other benefits and attorney fees, then dividing the remainder by the weekly compensation rate applicable at the time of the prior injury to determine the number of weeks of compensation which have been paid to the worker. Through this method the trial court can objectively determine the number of weeks of benefits which remain to be paid, if any, from the maximum weekly limitation and calculate any overlap between the amounts paid for the prior disability and the benefits payable as a result of the second injury. Cf. Paternoster v. La Cuesta Cabinets, Inc., 101 N.M. 773, 689 P.2d 289 (Ct.App. 1984) (involving allowance of credits for overpayment of compensation benefits).
Our review of the record indicates that although there is sufficient evidence to have permitted the trial court to determine the total amount of the prior settlement and expert medical testimony concerning the degree of disability suffered by claimant resulting from his prior injury, the record fails to contain sufficient evidence to have permitted the trial court to ascertain with any degree of reasonable certainty the component amounts contained in the settlement for compensation installments. The proof offered by the Fund, apart from showing the amount awarded for attorney fees, failed to clearly delineate what portion of the remaining settlement was specifically allocated for compensation benefits, future medical expenses, vocational rehabilitation benefits, if any, or other specific benefits. Absent such evidence, the trial court could not properly calculate the amount of any deduction under Section 52-1-47(D). Hence, its denial of credit to the Fund was proper. Cf. Parks v. Dade County Waste Div., 402 So.2d 563 (Fla. App. 1981) (claim of deduction properly denied where employer failed to establish the specific amount of the total settlement award allocated to permanent disability payments).

II. SUFFICIENCY OF THE EVIDENCE
The Fund also argues that the record is deficient of substantial evidence to support the trial court's finding that the medical expenses paid by Good Samaritan and Zurich-American for the benefit of claimant were reasonable and necessary. At the beginning of trial, counsel for Good Samaritan advised the court that the parties had agreed to a number of facts, including the fact that as of April 20, 1986, the sum of $25,873.56 had been paid to or on behalf of claimant by the employer as medical expense.
A party seeking recovery of medical expenses in a worker's compensation proceeding has the burden of proving that the expenses were reasonably necessary and directly related to the worker's disability. Mares v. Valencia County Sheriff's Dep't., 106 N.M. 744, 749 P.2d 1123 (Ct.App. 1988). Similarly, a party seeking payment or reimbursement of medical expenses carries the burden of proof on this issue. DiMatteo v. County of Dona Ana, 104 N.M. 599, 725 P.2d 575 *927 (Ct.App. 1985). A bill for medical services rendered, however, may constitute prima facie evidence of the reasonableness of the service. Id. Good Samaritan, Zurich-American, and the Fund stipulated that the employer and its carrier had paid medical expenses on behalf of the claimant in the amount of $25,873.56.
Good Samaritan and Zurich-American contend that for the purpose of obtaining reimbursement from the Fund for payments made in excess of the employer's apportioned liability, the stipulation, like medical bills, constituted prima facie proof that the payment was reasonable and necessary and directly related to claimant's disability, Section 52-2-11(f) (Orig.Pamp.), and thus shifted the burden to the Fund to establish the contrary. We decline to adopt such rule. See Mares v. Valencia County Sheriff's Dep't; DiMatteo v. County of Dona Ana. The stipulation between the parties dealt only with the fact of payment, not whether the expenses were reasonable and necessary or whether the expenses were directly related to the claimant's disability. The bills themselves were not introduced into evidence.
Upon review of the record we determine that the stipulation presented to the trial court failed to specifically indicate whether the parties, in making the stipulation, intended that the sum of $25,873.56, which was paid to or on behalf of claimant as medical expenses, also meant to stipulate that the payments were reasonable and necessary and directly related to the worker's disability. On appeal the Fund contends that in its stipulation it only agreed that the sum of $25,825.56 was paid, not that this amount was reasonable and necessary. In contrast, Good Samaritan and Zurich-American contend that the Fund's stipulation to sums paid by them for medical expenses constituted prima facie evidence that the payments were reasonable and necessary. We do not interpret the stipulation so broadly. The Fund disputed the sufficiency of proof regarding the medical expenses and submitted a requested conclusion of law indicating that "[h]aving submitted no evidence with respect to the reasonableness or necessity of any medical bills, plaintiffs are [not] entitled to reimbursement." Good Samaritan and Zurich-American submitted a requested finding of fact reciting that "[a]s of August 20, 1986, [they paid] $25,873.56 ... to or on behalf of claimant." The requested finding omitted language indicating that this payment was reasonable and necessary and directly related to claimant's subsequent disability.
Stipulations which admit certain facts are looked upon with favor by the courts because they have the effect of simplifying and expediting litigation. Anacomp, Inc. v. Wright, 449 N.E.2d 610 (Ind. App. 1983). In construing stipulations made by the parties, the agreements are subject to a fair and liberal construction in harmony with the intent of the parties. Griego v. Hogan, 71 N.M. 280, 377 P.2d 953 (1963); In re Quantius' Will, 58 N.M. 807, 277 P.2d 306 (1954). Although stipulations accepted by the court are considered conclusive and binding as to the matters embraced therein, they will not be interpreted to admit facts which were obviously intended to be controverted. Anacomp, Inc. v. Wright. Similarly, a stipulation will not be construed as extending beyond the plain language of the agreement, the circumstances leading to the stipulation, and the result intended to be accomplished. See Griego v. Hogan. This rule is particularly true where, as in this case, the Fund, in response to requests for admission of facts, expressly denied that the medical expenses paid by Zurich-American were reasonable and necessary for the care and treatment of claimant.
We conclude that the stipulation relating to the sums paid for medical expenses only agreed to the total amounts actually paid to or on behalf of claimant at the time of the stipulation and not to the other required elements of proof. Cf. Alber v. Nolle, 98 N.M. 100, 645 P.2d 456 (Ct.App. 1982) (stipulation to amount of medical and dental expenses and to fact that expenses were reasonable and necessary supported an award for such expenses). In the present case, without additional *928 proof, the record fails to contain substantial evidence to support the trial court's finding that the medical expenses paid by Good Samaritan and Zurich-American were reasonable and necessary or directly related to claimant's disability so as to permit reimbursement of these sums from the Fund.

III. AWARD OF POSTJUDGMENT INTEREST AGAINST THE FUND
The trial court entered judgment against the Fund on October 7, 1987, including an award of postjudgment interest in favor of Good Samaritan and Zurich-American for amounts which the Fund was ordered to reimburse appellees. The Fund moved to delete this provision for payment of interest on the judgment; however, prior to any ruling by the trial court on this motion, the Fund filed its notice of appeal. Thereafter, on December 1, 1987, the trial court entered an amended judgment deleting the provision for postjudgment interest. The trial court retains jurisdiction to rule on any motion directed against the judgment within thirty days after the entry of such judgment; however, if the court fails to rule on the motion within thirty days following filing, the motion is deemed denied by operation of law. SCRA 1986, 12-201(E)(5). See also Chavez-Rey v. Miller, 99 N.M. 377, 658 P.2d 452 (Ct.App. 1982). Where a notice of appeal is filed, the trial court is deprived of jurisdiction except for purposes of perfecting the appeal. State ex rel. Bell v. Hansen Lumber Co., 86 N.M. 312, 523 P.2d 810 (1974). Under these facts we hold that the trial court lost jurisdiction to enter the amended judgment, and the Fund properly preserved this issue for appellate review.
An award of postjudgment interest against the Fund is proper only on that portion of the judgment against the Fund which was rendered in favor of an injured worker. The Fund is not liable for the payment of postjudgment interest on amounts of reimbursement payable by the Fund to an employer or its carrier, and inclusion of an award of postjudgment interest against the Fund is not permissible. Mares v. Valencia County Sheriff's Dep't. Thus, the award of postjudgment interest against the Fund is not authorized under the SIA.

CONCLUSION
We affirm the judgment of the trial court as to Issue I and reverse as to Issues II and III. We remand for entry of an amended judgment consistent with this opinion. Reasonable attorney fees in the amount of $1,200.00 are awarded to claimant for the services of his attorney on appeal payable by the Fund. See Herndon v. Albuquerque Pub. Schools, 92 N.M. 287, 587 P.2d 434 (1978); Archuleta v. Safeway Stores, Inc., 104 N.M. 769, 727 P.2d 77 (Ct.App. 1986); NMSA 1978, § 52-1-54 (Orig.Pamp.).
IT IS SO ORDERED.
BIVINS and ALARID, JJ., concur.